BOARD OF COM'RS OF LEAVENWORTH CO. *v.* CHICAGO, R. I. & P. RY. CO.

(*Circuit Court, W. D. Missouri, W. D.*   November, 1883.)

1. LACHES—STATUTE OF LIMITATIONS—CONCEALED FRAUD.
    It is well settled that where the facts alleged in the bill disclose laches on the part of the complainant, the court will refuse relief on its own motion, even where the defense of laches is not pleaded.
    *Sullivan* v. *Portland, etc., R. Co.* 94 U. S. 806.

2. SAME—DEFENSE TO LACHES ON THE GROUND OF FRAUD.
    To take advantage of the exception provided for in a case of concealed fraud, where otherwise the party would be barred by reason of his laches or the statute of limitations, it must be made to appear that the fraudulent transaction, from which relief is prayed, was one which concealed itself, or at least the allegations and proof must be such as to satisfy the court that the complainant could not have known of the facts constituting the fraud by the exercise of proper diligence and care.

3. SAME—WHAT DEEMED TO BE NOTICE.
    Whatever is sufficient to excite attention and put the party on his guard, and call for inquiry, is notice of everything to which this inquiry would have led.   When a person has sufficient information to lead him to a fact, he shall be deemed coversant with it.
    *Martin* v. *Smith,* 1 Dill. 96.

4. SAME—MISSOURI STATUTE OF LIMITATIONS.
    Section 3230, St. Mo. 1879. providing that actions for relief on the ground of fraud shall be commenced within five years from the time when the cause of action accrues, "the cause of action to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud," commented upon and approved by the court.

In Equity.

Bill in equity, alleging, among other things, that articles of consolidation entered into between the railroad corporations on the twenty-fifth day of September, 1869, were fraudulent and void, and praying, with other relief, that the same be set aside.   The complainant was a stockholder in one of the constituent companies.   The bill shows that the consolidated company issued bonds to the amount of $5,000,-000, secured by mortgage upon the road and property of that company, derived from the consolidation; that said mortgage was afterwards foreclosed, and the property sold under the decree of foreclosure, and that the respondent afterwards, through several successive consolidations, acquired the property.   The first consolidation and all subsequent proceedings are attacked by the bill as fraudulent and void.   The hearing was upon exceptions to the answer.

*John F. Dillon* and *Geo. W. Kretzinger,* for complainant.

*Thos. F. Withrow, M. A. Low,* and *J. D. S. Cook,* for respondents.

McCRARY, J.   Counsel have discussed at the bar numerous questions, and among them, that of the effect of the statute of limitations, and of the alleged laches of the complainant in delaying the commencement of these proceedings.   The articles of consolidation between the Chicago & Southwestern Railway Company, in Missouri, and the Iowa corporation of the same name, were entered into on the

twenty-fifth day of September, 1869, and this bill was not filed until the twenty-fifth day of September, 1882. In the mean time, as the bill avers, the consolidated company had executed bonds to the amount of $5,000,000, secured by a mortgage upon the road, which mortgage had been foreclosed, and, under the decree of foreclosure, the property had been sold.

The question is whether this long delay has been or can, under the circumstances, be justified or excused. Although there are no exceptions to that part of the answer in which this defense is pleaded, yet it was proper for counsel to discuss it, and for the court to consider it, as it arises upon the facts as they are stated in the bill. It is well settled that where the facts alleged in the bill disclose laches on the part of the complainant, the court will refuse relief on its own motion, even where the defense of laches is not pleaded. *Sullivan* v. *Portland, etc., R. Co.* 94 U. S. 806.

And as the defense of the statute of limitations proper, as well as that of laches, is pleaded in the case, we think that both may properly be considered at this time, in so far, at least, as they depend upon the facts disclosed upon the face of the bill.

The questions to be considered are: (1) Is the suit barred by the laches of complainant? (2) Is it barred by the statute of limitations of Missouri?

It must be conceded that both these questions should be answered affirmatively, unless the case falls within the exception recognized in cases of concealed fraud. The averment of the bill relied upon as bringing the case within this exception is as follows:

All which acts of pretended organization, consolidation, executing of bonds and trust deed, foreclosure, and sale under the same, and all the other unlawful and fraudulent acts hereinafter recited, were without the knowledge, privity, or consent of your orator, and have only during the present year come to its knowledge, and your orator ought not to be concluded or estopped thereby from a thorough and adequate remedy."

That this is not a sufficient allegation that the fraud was concealed from the complainant, and therefore not discovered at an earlier date, is entirely clear. In order to determine what allegations of concealment will be sufficient in cases of this character, it is important to consider the nature of the alleged fraudulent transaction, and the character of the acts alleged to have been fraudulent. Some fraudulent acts are such as to conceal themselves. If, for example, a trustee render false accounts to his *cestui qui trust*, and the latter has no means of knowing the true state of such accounts except as informed by the former, a court of equity would no doubt hold that the transaction was of a character to conceal itself, and would therefore hold it unnecessary to allege or prove any affirmative acts of concealment. The same would be true of a conveyance of property purporting on its face to be a sale for an adequate consideration, but which, by a secret agreement between vendor and vendee, is without consideration,

or made to hinder or defraud creditors. In such cases the fraud is concealed by not being divulged; all the acts of the parties in connection with the fraudulent transactions being in the nature of fraudulent concealment. See *Bailey* v. *Glover*, 21 Wall. 342, and cases cited. But where, as in the present case, the transaction complained of is the consolidation of two *quasi* politic corporations, made or attempted to be made under and by virtue of authority conferred by a public statute, by proceedings had and entered of record upon the books of the respective corporations, and by deeds of conveyance executed and recorded in the several counties and filed in the office of the secretary of state, it is difficult to see upon what ground the transaction can be regarded as one which conceals itself. On the contrary, the court would be inclined to hold that the stockholders of the respective corporations are charged with notice of the proceedings, and bound to proceed with reasonable diligence to annul them. And, however this may be, they cannot stand by for a series of years, making no sign of discontent, while other innocent parties invest their means upon the faith of the validity of the consolidation. *Brown* v. *Buena Vista Co.* 95 U. S. 160.

At all events, it would require very distinct allegations of affirmative acts of a fraudulent concealment to justify a court of equity in entertaining such a case, and if such allegations were made in a form to be regarded as sufficient upon their face, this court would be inclined to direct that the case be set down for hearing upon the sufficiency of the defense of laches and lapse of time upon evidence, before requiring the parties to go to their proofs upon other questions. In the very nature of the case the consolidation of the two railroad companies in question must have been a transaction quite public and notorious in its character, and well known to the public, and especially to the stockholders in the respective corporations and others pecuniarily interested. The fact that the line known as the Chicago & Southwestern Railway has become, by successive consolidations, a part of the Chicago, Rock Island & Pacific Railway, and has been for years operated by that company, is a fact very notorious, and would take a very strong showing to convince us that the authorities of the county of Leavenworth were kept in ignorance of it, or of the several steps by which it was accomplished, during a period of 13 years. It is said, however, that the complainant may have had notice of the fact of consolidation, but not of the facts rendering the consolidation fraudulent. No doubt the question in all such cases must be, not whether complainant had knowledge of the act complained of, but whether he knew, or might, by proper diligence, have known, of the facts constituting the fraud. But what are the facts constituting the alleged fraud in the present case? The principal allegation is that the consolidation was fraudulent and void because the constituent corporations were without power to consolidate. There is also an allegation that the consolidated company

issued stock in excess of the amount authorized by law; but this latter fact would not, if proved, affect the validity of the consolidation. Can the defendant be heard to plead its ignorance of the powers of the corporation of which it was a member? We think it was bound to know what those powers were; and if it were not, it would be held bound, in such a case as this, to make inquiry within a reasonable time after the act complained of, and would be held to such knowledge as it might acquire by such inquiry. "Whatever is sufficient to excite attention, and put the party on his guard and call for inquiry, is notice of everything to which the inquiry would have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it." *Martin* v. *Smith*, 1 Dill. 96, and cases cited.

The complainant knew, or should have known, that the corporation in which it was a stockholder had been consolidated with the Iowa corporation. It also knew, or might have ascertained, the terms of the consolidation, and whether it was within the powers of the corporation to enter into it. Having notice of these things, and being advised that large sums of money were about to be raised by the consolidated company, to be secured by mortgage upon the road, and expended in its completion and equipment, it is impossible to hold that it was not guilty of laches in waiting 13 years, and until a valuable property had been built up and large interests acquired upon the faith of the validity of the consolidation, before instituting these proceedings. An examination of the allegations of the bill will not only show that there are no allegations of concealment such as the law requires, but, moreover, that the acts complained of were such as could scarcely have been unknown to or concealed from the complainants. Whether there was power to consolidate was a question of law, arising upon the construction of a statute. The assumption of power to consolidate could not constitute a concealed fraud. It may have resulted from a misconstruction of the statute, but, if so, the complainant knew it, or might have known it, at the time of the consolidation. The same is true as to the overissue of stock, although, as already stated, that fact, if proved, would not render the consolidation void.

We conclude, therefore, (1) that the bill does not show a case of concealed fraud; and (2) that it does show laches on the part of complainant.

In considering these questions we have confined ourselves to the allegations of the bill respecting the original or first consolidation complained of, for the reason that it is conceded by counsel for complainant, and is beyond dispute, that the complainant's right to the relief sought in this case must depend upon the determination of the question whether it can successfully attack that transaction.

It is insisted that the defense of laches cannot be interposed where the transaction assailed is void, and not merely voidable. We are

not aware of any authority for this distinction. If the complainant has been guilty of laches, a court of equity will not look into the transaction at all. It will refuse its aid upon the ground that nothing can call it into activity but conscience, good faith, and reasonable diligence. These wanting, the court will remain passive and do nothing. It will not inquire whether the transaction complained of was void or voidable. It will leave the parties where it finds them. The conclusion already reached renders it unnecessary to consider the defense of the statute of limitations proper. There is, however, one view of the statute which, if adopted, would require us to hold the present suit barred, independently of the question whether there was concealed fraud.

The Missouri statute provides that actions for relief on the ground of fraud shall be commenced within five years from the time when the cause of action accrues, "the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, *at any time within ten years*, of the facts constituting the fraud." St. Mo. 1879, § 3230.

This statute, by its terms, requires the injured party, at his peril, to discover the fraud within 10 years. According to the allegations of the bill, the alleged fraud in this case was not discovered until after the expiration of 10 years. The allegation is that the fraud was discovered within the year preceding the filing of the bill, which would fix the time of discovery more than 12 years after the consolidation. We are not aware that this provision of the statute has ever been construed by the supreme court of this state, but it was discussed by this court in *Martin v. Smith, supra,* and the conclusion was reached that its effect is to bar a suit for relief on the ground of fraud, where the fraud is discovered after the expiration of 10 years. While this court would not be inclined to adopt and follow a state statute of limitations which make no exception with respect to cases of concealed fraud, we should feel bound to adopt and follow the statute in question upon the ground that it grants a reasonable time within which the discovery shall be made. The highest interests of society demand that there should at some time be an end of litigation, and the statute in question was doubtless enacted in view of this demand, and to prevent the prosecution of state claims. Without the limitation which this statute contains, it has often happened that suits on the ground of concealed fraud have been brought many years after the transactions, upon the ground of recent discovery, and courts have felt constrained to entertain them, notwithstanding, by reason of the lapse of time, witnesses may have died, papers and proofs been lost or destroyed, and the rights of innocent third parties become involved. In the light of experience we cannot say that the statute in question, giving 10 years and no more in which to make the discovery, is not reasonable and just. We think it is one which a federal court of equity, sitting within the state of Mis-

.souri, should adopt and follow, and upon this ground we should feel bound to hold the present suit completely barred, independently of the other questions discussed in this opinion.

As the defenses of laches and the statute of limitations must be sustained, it would be a waste of time and labor to examine the other questions discussed by counsel at the bar, and therefore, without considering them, we overrule the exceptions to the answer.

KREKEL, J., concurs.